32 C.C.P.A.(Patents)

## In re MID–WEST ABRASIVE CO.

(two cases).

Patent Appeals Nos. 4935, 4936.

Court of Customs and Patent Appeals.

Jan. 4, 1945.

Whittemore, Hulbert & Belknap, Clarence B. Zewadski, and William H. Gross, all of Detroit, Mich., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

We have before us appeals from decisions of the Commissioner of Patents (speaking through an assistant commissioner), 57 USPQ 328, affirming decisions of the Examiner of Trade-Marks denying appellant's applications for registrations of certain claimed trade-marks.

Identical issues are presented in the respective cases, and, while separate records are before us, both were briefed and orally argued together by Mid-West Abrasive

Company and by the Solicitor for the Patent Office.

The applications involved were filed on the same date, May 25, 1942. The drawing of that involved in appeal No. 4935 consists of the hyphenated word "Mid-West" only, while that in appeal No. 4936 consists of that word shown above a representation of some animal (possibly a beaver, or perhaps a wolverene) which is referred to in the decision of the commissioner as "a relatively insignificant design." It is noted that the specimens, supposed to show the style of the marks as actually used, filed in both cases, include the design referred to. The goods named in the respective cases are identical—"Coated Abrasive Papers and Cloths, and Abrasive Stones."

Appellant places no stress whatever upon the design, and the controversy in both cases is confined strictly to the word, "Mid-West."

The decisions of the Commissioner of Patents were rendered on the same day (May 5, 1943) in substantially identical phraseology (see 57 USPQ 328) and we here quote that rendered in (our) appeal No. 4935 in full:

"This is an appeal from the refusal of the Examiner of Trade-Marks to grant applicant registration of the mark 'Mid-West' for coated abrasive papers and cloths and abrasive stones, on the ground that he considers the word 'Mid-West' is geographical in view of my decision in Ex parte Western Stove Co., Inc., 538 O.G. 751, 163 Ms. D. 919, 53 U.S.P.Q. 316.

"That case involved the mark 'Western Holly'. Holly is a tree or shrub and the adjective 'Western' designates the species whose geographical distribution is west of the Mississippi and disclaimer of the word 'Western' of the mark 'Western Holly' was required on the ground that as used in the mark the word 'Western' was geographical.

"In the present case the mark consists of the word 'Mid-West' alone. According to Webster's New International Dictionary, Second Edition, a definition of the word Mid-West (Middle West) is as follows: 'That part of the United States occupying the northern half of the Mississippi River basin; roughly, the section extending from the Rocky Mountains to the Alleghenies, north of the Ohio River and the southern boundaries of Missouri and Kansas; the North Central States.'

"This is the predominant meaning of the word in the United States.

"Applicant calls attention to Champion Spark Plug Company v. Globe-Union Manufacturing Company, 88 F.2d 970 [972], 24 C.C.P.A. 1088, 484 O.G. 742, in which the word 'Globe' was held to be not merely geographical. However in that case Judge Garrett stated with respect to the word 'Globe' as follows: ' * * * it identifies no particular geographical location, nor is its proper use as a trademark likely to interfere with or embarrass any public or private right.'

"The same cannot be said with regard to the word 'Mid-West.' This word not only identifies a geographical location with considerable particularity but also every one has the right to use the word for purposes of geographical designation and registration of the mark for any specific goods would tend to interfere with or embarass the rights of others to the free use of the word in connection with products identified with the mid-west.

"The above-stated geographical meaning of the word 'Mid-West' is at least so predominant over any other meaning the word may have that in my opinion the word must be considered to be merely geographical and therefore its registration under the Act of February 20, 1905 is prohibited by section 5 of that Act.

"The refusal of the Examiner of Trade-Marks to grant the registration for which applicant has applied is affirmed."

It is thus to be seen that appellant's applications were denied solely upon the ground that the word "Mid-West" is merely a geographical name or term, the only authority cited being the definition given in the second (1935) edition of Webster's New International Dictionary.

Section 5, subsection (b), third proviso, of the Trade-Mark Registration Act of February 20, 1905, 15 U.S.C.A. § 85(b), provides that no mark which consists of "merely a geographical name or term, shall be registered under the terms of this Act."

So far as we are able to determine, this particular provision was embraced in the act at the time of its passage and has remained unaffected by any subsequent amendment. This we say because it is evident that the decisions in the cases before us are contrary to the long continued practice of the Patent Office relative to registration of the term "Mid-West," except as that practice may have been modified by implication in the case of Western Stove Co., Inc., referred to in the commissioner's decision, 53 USPQ 316.

The brief on behalf of appellant states: "Insofar as we can ascertain, the Patent Office in the past has never denied registration of the term 'mid west' on the ground that it is geographical. Nor can we find any case where a Court held the term 'mid west' geographical, and thus not a valid trade mark. On the contrary, the Patent Office has granted in excess of 25 registrations in which the term 'Mid West' is the sole or dominating part of the mark."

A list of the registrations so alluded to was brought to the attention of the commissioner in the brief of appellant before him (made a part of the appeal record here) and is repeated in its brief before us. The commissioner made no allusion to such prior registrations, nor to the prior Patent Office practice.

So far as the record shows, the earliest registration of the term under the 1905 act (there was one in 1902 before passage of the 1905 act) was granted November 19, 1912 (registration No. 89,194), for use as a trade-mark on "Steel Wool Journal & Machinery." The lastest was granted under date of September 20, 1938 (registration No. 360,487), for use on "Electric Locomotives." The many registrations between those dates were for use on various types of goods, descriptions of which are unnecessary in view of the issue here involved.

It must be assumed that for more than a quarter of a century (1912 to 1938) the term "Mid-West" (or its equivalent, "Middle West") was not regarded by the commissioners of patents as being "merely a geographical name or term"; otherwise, its registration would not have been so frequently granted.

Appellant contends that "Mid-West" is not geographical; that "listing" it in a dictionary cannot make it geographical; that it has never before been denied registration on the ground that it is geographical; that if the commissioner's decision in these cases is correct the many prior registrations of the term are invalid and should never have been granted, and that doubt will be cast upon the validity of many

other registrations embracing terms such as "Western," "Northern," "Eastern," "Southern," "Nor'-East," "North," "Deep South," and various others containing words having geographical suggestion.

The brief for appellant states, in substance, that it is difficult, if not impossible, to find a case exactly in point because neither the registrability nor the validity of marks such as "Mid-West," "Western," etc., has ever been raised (except to the extent that "Western" was involved in the ex parte cases of Western Stove Co., Inc., supra.) and Western Supply Co., 58 USPQ 489, the latter decided by the commissioner July 14, 1943, subsequent to his decisions in the instant cases. It is insisted by appellant that the decision in the latter case "substantially modifies" the decision in the former case and in the instant cases "as to his interpretation of the word 'geographical' as it appears in the Trade Mark Act."

Appellant, however, cites decisions in the cases of Champion Spark Plug Co. v. Globe-Union Mfg. Co., 88 F.2d 970, 24 C.C.P.A. 1088, 33 USPQ 207 (discussed in the decision of the commissioner, supra), in which we held that the word "Globe" is not merely a geographical name or term; Hamilton Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629, in which the Supreme Court held the words "The American Girl," as applied to women's shoes not to be a geographical or descriptive term; Southeastern Brewing Co. v. Blackwell, 80 F.2d 607, 609, in which the Circuit Court of Appeals of the Fourth Circuit held that the words "Old South" or "Old South Brew" " * * * do not constitute a term that is geographical or descriptive * * *," and Century Distilling Co. v. Continental Distilling Corporation, 38 USPQ 105, in which the United States District Court (E. D. Pennsylvania) upheld the validity of the word "Dixie" as a trade-mark.

The brief of the Solicitor for the Patent Office cites no cases but discusses some of the decisions cited by appellant. It may be added that the brief makes no reference to any definition of the term except that from Webster quoted in the commissioner's decision.

■ In passing upon the registrability of a claimed trade-mark we do not consider the validity or invalidity of prior registrations of the same marks. No citation of authorities is necessary in support of this well established and long followed rule. No reason is found for making any exception to it here. Should a case involving prior registration of the term come before us it will be considered, in the light of the statute, upon the facts disclosed by the record in the case.

■ We have not been able to ascertain when "Mid-West" became a term of common usage, but it is certain that it had become such at the time the applications here involved were filed and that it then had, and now has, nothing other than a geographical significance.

The definition quoted by the commissioner from Webster's New International Dictionary appeared in the 1935 edition of that work. It was repeated in the 1939 edition.

There are other defining and describing authorities.

In the 1942 edition of the Encyclopedia Britannica "Middle West" is defined as "the northern portion of the central United States and more specifically the States of Ohio, Indiana, Illinois, Michigan, Iowa, Wisconsin and Minnesota."

The Dictionary of American English on Historical Principles, 1942, Vol. 3, defines the term as follows: "North central portion of the United States embracing approximately the area north of the Ohio River and its latitude from the Rocky Mountains to the Alleghenies."

American Red Cross, for its work, maps the United States by areas. As shown on its map of February 27, 1943, in the Division of Maps, Library of Congress, there is a "Midwestern Area" which includes several states, some of them east and some of them west of the Mississippi River.

A map of American Sociological Society in the Division of Maps, Library of Congress, shows a "Midwest Society" covering numerous states, some of them east and some of them west of the Mississippi River.

It is clear that "Mid-West" is a geographical term, relating to an area within the United States, which area has no definite boundaries. There is no "official" or statutory designation of the area and so, strictly speaking, it is not a legally recognized name, but in common usage it is a term which has no meaning or significance other than geographical.

Therefore, we feel constrained to agree with the commissioner's conclusion.

For the purpose of formal judgment we treat the cases as being consolidated, and, in both appeals, 4935 and 4936, the decisions of the commissioner are affirmed.

Affirmed.